IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARTIN H. POEL,

    Plaintiff,

v.                                                                         CIV No. 11-882 JB/GBW

WILLIAM WEBBER, STEVEN
VOGEL, and ROBERT ROBLES,

    Defendants.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### *Background*

On March 3, 2003, Plaintiff, Martin Poel,[1] retained Defendants William Webber and Steven Vogel ("Defendants")[2] as counsel in a lawsuit he filed against United Concordia Insurance Company ("United") alleging certain violations of New Mexico insurance laws. *Doc. 1*, ¶¶ 12-15. United, in turn, filed a countersuit against Plaintiff for malicious abuse of process. *Id.* ¶ 19. After more than a year of litigation, Plaintiff alleges that he instructed Defendants to limit themselves to defense of the countersuit

---

[1] Plaintiff is proceeding *pro se* in this matter; however, as his signature on the complaint indicates, he has a law degree. *See doc. 1* at 15. Moreover, the State Bar of New Mexico lists him as an active attorney. See State Bar of New Mexico, Find an Attorney, http://www.nmbar.org/findattorney/AttorneyInfo.aspx?id=FopNTk42Qvg%3d (last visited June 21, 2012)). Plaintiff, in fact, has appeared as counsel in this District. *Wiatt v. State Farm Ins. Cos.*, No. 1:07-cv-0526-JB/KBM (D.N.M. May 25, 2007), ECF docket. Ordinarily, the Court must construe the assertions of a *pro se* litigant liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). That consideration is not extended to a *pro se* litigant who is a lawyer. *See Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001).

[2] As indicated in the caption, Plaintiff has also sued Judge Robert Robles in this action. *See doc. 1*. However, I have previously recommended the dismissal of the claims against him. *See doc. 48*. Plaintiff has agreed that such dismissal is appropriate. *See doc. 49*. As such, when I use the term "Defendants" herein, I refer only to Defendants Webber and Vogel.

against Plaintiff and to a demand for injunctive relief against United.[3] *Id.* ¶ 22. Plaintiff contends that, as of that date -- April 27, 2005 -- he owed $38,066.61 for Defendants' legal services. *Id.*

Plaintiff alleges that Defendants were unhappy with his limitation because it would prevent them from recovering damages sufficient to cover their legal fees. *Id.* ¶ 23. Consequently, Defendants pressed Plaintiff to continue pursuing a large financial judgment against United in hopes of leveraging a significant settlement. *Id.* According to Plaintiff, Defendants' activities over the next six months led to a dramatic increase in his legal bill which, by August 22, 2005, was over $350,000. *Id.* ¶ 24.

Plaintiff claims that Defendants refused to accept a settlement offer received from United until Plaintiff agreed to a "Resolution Agreement" with Defendants regarding the bill for their legal services. *Id.* ¶ 27. Plaintiff entered into the Resolution Agreement in which he agreed to pay Plaintiffs another $200,000 in addition to the $33,487.50 which he had already paid. *Id.* ¶ 27-28.

Plaintiff came to believe that Defendants' conduct subsequent to the signing of the Resolution Agreement amounted to an "anticipatory breach" of the Agreement. *Id.* ¶¶ 28-31. Consequently, he filed suit in state court alleging "Professional Malpractice, violations of the New Mexico Unfair Practices Act, Intentional Infliction of Emotional Distress, Fraud, and violations of Plaintiff's New Mexico constitutional rights." *Id.* ¶ 31-

---

[3] Because review of a motion to dismiss requires viewing facts in Plaintiff's favor, *Smith v. United States*, 561 F.3d 1090, 1097-98 (10th Cir. 2009), I treat the assertions in his Complaint as true.

2

33. Defendants responded by filing counterclaims against Plaintiff. *Id.* ¶ 34. The case was presided over by the Honorable Robert Robles, a judge of the Third Judicial District Court of the State of New Mexico. *Id.* ¶ 31. Eventually, Judge Robles dismissed all of Plaintiff's claims and, following a bench trial, ruled in Defendants' favor on the counterclaims. *Id.*¶¶ 35-46.

Plaintiff filed suit in this Court on October 1, 2011 alleging various grounds for relief. *See generally doc. 1* ¶¶ 12-80. Plaintiff's first claim is that Defendants conspired with Judge Robles to deprive him of his rights under the state and federal constitutions. *Id.*¶¶ 47-50. This claim is brought under Title 42 U.S.C. §§ 1983.[4] *Id.*¶¶ 4-8. Plaintiff's remaining claims are "breach of contract," "professional malpractice," "unfair practices act," and "fraud." *Id.*¶¶ 55-80.

Defendants Vogel and Webber request dismissal based on a variety of identical grounds. *See docs. 16, 25.* In part, Defendants Vogel and Webber ask this Court to dismiss this suit because the *Rooker-Feldman* doctrine prohibits the Court from hearing Plaintiff's claims and because Plaintiff fails to state a claim upon which relief can be granted. The presiding judge has referred these motions to me for proposed findings and recommended dispositions. *See doc. 23.* Defendants' motions to dismiss rest on the same grounds, so I will address them together. Because Plaintiff fails to state a plausible claim for a 1983 conspiracy, I recommend dismissing that claim without prejudice.

---

[4] Plaintiff also cites Title 42 U.S.C. §§ 1985(3). As discussed *infra*, that statute has no applicability to Plaintiff's claims.

3

Because the remaining claims are brought under state law, I recommend dismissing those claims without prejudice as well.

## *Analysis*

### *The Rooker-Feldman Doctrine*

This doctrine, if applicable, would deprive the Court of jurisdiction over this case. As such, it will be addressed first. In light of the "general confusion [that] surrounds the *Rooker-Feldman* doctrine[,]" *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1138 (10th Cir. 2006), a brief explanation of the doctrine is necessary. The *Rooker-Feldman* doctrine, so named for the two cases in which the Supreme Court set forth the doctrine, addresses the power of a Federal court to hear a matter already heard by state court. *Id.* at 1142-43. A discussion of the cases that gave rise to the doctrine is essential because the doctrine applies only to cases which mirror those original cases. *See Skinner v. Switzer*, 131 S. Ct. 1289, 1297 (2011) (noting that the doctrine is "confined to cases of the kind from which the doctrine acquired its name").

The doctrine began with *Rooker v. Fidelity Trust Co.* 263 U.S. 413 (1923). In *Rooker*, parties filed suit in a federal district court "[a]lleging that [an] adverse state-court judgment was rendered in contravention of the Constitution." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (citing *Rooker*, 263 U.S. at 414-15). As a remedy, the parties in *Rooker* "asked the federal court to declare [the state-court judgment] 'null and void.'" *Id.* (quoting *Rooker*, 263 U.S. at 414-15). On appeal, the

4

Supreme Court noted that appellate jurisdiction over state-court judgments is vested exclusively in the Supreme Court. *Id*. As such, the *Rooker* Court held that a federal district court lacked subject matter jurisdiction over claims seeking to overrule state-court judgments. *Id.* at 284-85.

The second case that gave rise to the doctrine was decided sixty years later. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Feldman*, two plaintiffs sought waivers to the District of Columbia bar's requirement that applicants graduate from accredited law schools. *Exxon Mobil Corp.*, 544 U.S. at 285. When the District of Columbia Court of Appeals[5] rejected their waiver requests, the plaintiffs brought suit in federal court. *Id*. The Supreme Court held that the claims concerned court actions that were partially adjudicative and partially legislative in nature. *Id.* at 285-86. With regards to those actions that were adjudicative, the Court held that "'to the extent that [plaintiffs] sought review in the District Court of the District of Columbia Court of Appeals' denial of their petitions for waiver, the District Court lacked subject-matter jurisdiction over their complaints.'" *Id.* at 285 (quoting *Feldman*, 460 U.S. at 482).

"The *Rooker-Feldman* doctrine prohibits federal suits that amount to appeals of state-court judgments." *Bolden v. City of Topeka*, 441 F.3d 1129, 1139 (10th Cir. 2006). More specifically, the doctrine bars "cases brought by state-court losers complaining of

---

[5] Rulings of the District of Columbia Court of Appeals are treated in the same manner as rulings of the highest court of a State. *See* 28 U.S.C. § 1257(b) ("For the purposes of [appeals from state-court judgments], 'the term 'highest court of a State' includes the District of Columbia Court of Appeals.").

5

injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 1142-43.

Indeed, it appears that Plaintiff's suit fits this definition. He did lose in state court. The injuries of which he complains in his 1983 claim were caused by the state-court judgment. And he does assert that the state-court judgment was incorrect and should be rejected. Nonetheless, I conclude that the *Rooker-Feldman* doctrine does not preclude a claim such as Plaintiff's which alleges a conspiracy between the judiciary and others by which the underlying state-court judgment was obtained.

My conclusion rests on the same logic expressed by the Seventh Circuit in *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995). In *Nesses*, the plaintiff suffered several losses in lawsuits he brought in state court. *Id*. at 1004. Eventually, he sued the lawyers and judges involved in the state lawsuits. *Id*. He "allege[d] a massive, tentacular conspiracy among the lawyers and the judges to engineer [his] defeat[s]" in the state-court suits. *Id*. The federal district court dismissed the federal case for want of jurisdiction on the basis of the Rooker-Feldman doctrine. *Id*. On appeal, although it affirmed the dismissal on other grounds, the Seventh Circuit Court of Appeals held that the doctrine did not apply. As the opinion authored by Judge Posner explained:

> [The *Rooker-Feldman* doctrine] is not that broad. Were [a plaintiff] merely claiming that the decision of the state court was incorrect, even that it denied him some constitutional right, the doctrine would indeed bar his claim. But if he claims, as he does, that people involved in the decision

6

> violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he can, without being blocked by the *Rooker-Feldman* doctrine, sue to vindicate that right and show as part of his claim for damages that the violation caused the decision to be adverse to him and thus did him harm. Otherwise there would be no federal remedy for a violation of federal rights whenever the violator so far succeeded in corrupting the state judicial process as to obtain a favorable judgment.

*Id*. at 1005 (internal citation omitted). The Tenth Circuit, in fact, has quoted to this very language when recognizing that "there are limitations on the scope of the *Rooker-Feldman* doctrine when a plaintiff alleges that state procedures have been corrupted." *Read v. Klein*, 1 Fed. App'x 866, 870 (10th Cir. 2001). Admittedly, this portion of the *Read* opinion was dicta because the court determined that it need not reach the issue as the plaintiff's claims were fatally flawed for other reasons. Nonetheless, *Read* strongly suggests that the *Rooker-Feldman* doctrine should be limited as explained in *Nesses.*

Just as in *Nesses*, Plaintiff claims that Defendants corrupted the state judicial process and that such corruption led to the state-court judgment against him. Consequently, Plaintiff is not so much appealing the state-court judgment against him as he submits it as the goal and proof of an illegal conspiracy against him. I conclude that the *Rooker-Feldman* doctrine does not preclude such a claim from being brought in this Court.

*Failure to State a Claim Under 1983*

Defendants next seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Doc. 16* at 4-8; *doc. 25* at 4-5. "The nature of a Rule 12(b)(6)

motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). In adjudicating a Rule 12(b)(6) motion, the Court treats all facts alleged in the Complaint as true and draws any necessary inferences in the light most favorable to the non-movant. *Hill v. Kemp*, 478 F.3d 1236, 1261-62 (10th Cir. 2007). In order to survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Tenth Circuit set forth its post-*Twombly* understanding of the requirements of a complaint in *Robbins v. Oklahoma*. 519 F.3d 1242 (10th Cir. 2008). As the Circuit noted:

> As best we understand it . . . [*Twombly*] seeks to find a middle ground between "heightened fact pleading," which is expressly rejected, and allowing complaints that are no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," which the Court stated "will not do."

*Id.* at 1247 (internal citations omitted). The *Robbins* court explained *Twombly*'s new requirement of plausibility as follows:

> "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." *Id*. at 1974. . . . This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. at 1965 n.3; *see Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point

8

>the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The *Twombly* Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations ... would have little idea where to begin." *Id*.

*Robbins*, 519 F.3d at 1247 -1248.  Finally, Robbins cautions that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context." *Id*. at 1248.

The Supreme Court has also expounded upon the meaning of *Twombly*:

>Two working principles underlie [the] decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. .. . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (citation omitted). The Court further explained that "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 1950.

In order to state a claim under §1983, a claimant must show (1) deprivation of a right secured by the federal constitution or federal laws; and, (2) that the deprivation was caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). In the instant case, Defendants are private actors and, ordinarily, their actions are not under color of state law. Contrary to Plaintiff's argument (*doc. 26* at 10), neither the fact that Defendants are licensed to practice law by the state nor the fact that they employ court power to accomplish an objective constitutes "acting under color of state law" under §1983. *See Barnard v. Young*, 720 F.2d 1188, 1189 (10th Cir. 1983) (attorney did not act under color of state law when he employed the device of a subpoena *duces tecum*); *see also Anderson v. Kitchen*, 389 Fed. App'x 838, 840 (10th Cir. 2010) (attorney who allegedly misled state judge and thereby obtained eviction order did not act under color of state law).

Nonetheless, "a §1983 conspiracy claim may arise when a private actor conspires with state actor to deprive a person of a constitutional right under color of state law." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990). Where such a conspiracy exists, the private actor can be held liable under §1983 for the actions of his state actor co-conspirator. *Id*. Of course, to bring such a claim, a plaintiff must sufficiently plead the existence of the underlying conspiracy. "When plaintiffs in a civil rights action attempt to assert the necessary element of "state action" by implicating a state judge in a conspiracy with private defendants, 'mere conclusory allegations with

no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action.' 'The standard is even stricter when the state official[] allegedly involved in the conspiracy [is] immune from suit.'" *Crabtree ex rel. Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990) (court of appeals adopting and attaching trial court's opinion granting 12(b)(6) motion for failure to state a claim) (citations omitted).

In the instant case, Plaintiff's allegations of conspiratorial conduct fall into only two categories. First, Plaintiff's complaint is replete with conclusory statements that assert the existence of state action or a conspiracy. *Doc. 1*, ¶4 ("Defendants are private persons acting as 'state actors' …"); ¶5 ("Defendants [acted] under color of state law…"); ¶7 ("Defendants, in their private capacity as private attorneys at law, conspired with Judge Robert Robles …"); ¶47 ("Defendants, conspiring with Judge Robles, seized and searched Plaintiff's property without probable cause…"); ¶48 ("Defendants used their unique positions as 'state actors' to deprive Plaintiff of his right[s]."); ¶49 ("Defendants conspired with Judge Robert Robles … to deprive Plaintiff of his right[s]."). Given the conclusory nature of these allegations, *Iqbal* dictates that they are not entitled to be accepted as true and do nothing to satisfy Plaintiff's burden to state a plausible claim.

Second, Plaintiff claims that several of Judge Robles' rulings which were adverse to Plaintiff were incorrect as a matter of law. *Doc. 1*, ¶35 ("Judge Robles dismissed

11

Plaintiff's claims . . . with prejudice [for failure to state a claim but] Plaintiff was not given an opportunity to repair and perceived deficiencies…"); ¶36-37 ("Judge Robles dismissed all of Plaintiff's other claims . . . based upon doctrine of Judicial Estoppel [despite the fact that] there were no prior judicial decisions upon which to base Judicial Estoppel."); ¶41 ("Despite [Plaintiff producing expert testimony,] Judge Robles ruled that Plaintiff had not [done so,] and that his failure . . . was grounds for Malicious Abuse of Process, and punitive damages."); ¶44 ("With full knowledge of [the supporting evidence,] Judge Robles ruled that Plaintiff's claim . . . was frivolous . . . "); ¶45 (Judge Robles improperly ruled on the use of depositions); ¶46 (Judge Robles used the incorrect standard of proof when making rulings); ¶50 ("Judge Robles entered a judgment against Plaintiff that . . . was not based upon the record . . . ."). These allegations amount to nothing beyond disputing the legal soundness of Judge Robles' rulings. "A conspiracy cannot be found from allegations of judicial error, ex parte communications . . . or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions." *Crabtree*, 904 F.2d at 1481. The Complaint contains no such specific facts. In fact, the Complaint contains no other allegations relevant to establishing the existence of a conspiracy between Judge Robles and Defendants.[6] There can be no dispute that the allegations in the Complaint are grossly inadequate to state a plausible claim of a §1983 conspiracy.

---

[6] Plaintiff argues that he has "supplemented his Complaint with facts and legal arguments in Documents

On two separate occasions, the Complaint cites to Title 42 U.S.C. §1985(3). *Doc. 1*, ¶¶3, 8. Section 1985(3) prohibits persons from conspiring to deprive others of the equal protection of the law. While it does not require state action, it does require "proof that a conspirator's action was motivated by a class-based, invidiously discriminatory animus . . . ." *Dixon*, 898 F.2d at 1447. Plaintiff has made no allegation that the supposed conspiracy was motivated by any racial or other class-based discriminatory animus. As such, if he is attempting to raise a claim under §1985(3), he has failed to state one.

Because Plaintiff has failed to sufficiently plead a plausible conspiracy between Judge Robles and Defendants, I recommend dismissal without prejudice of Count I for failure to state a claim.

*Plaintiff's State Claims*

Besides Count I, all of Plaintiff's claims are brought under state law and are permitted in federal court only through the exercise of supplemental jurisdiction. *See* 28 U.S.C. § 1367(c). If Count I is dismissed, Plaintiff's remaining claims would no longer

---

20 and 26…." *Doc. 30* at 3. He argues that this "supplementation" should prevent the dismissal of his Complaint for failure to state a claim. Plaintiff is mistaken. First, a complaint cannot be supplemented by responses to motions. Instead, a plaintiff must amend their complaint pursuant to Fed. R. Civ. P. 15 and the applicable local rules. Plaintiff has not done so. Second, even assuming the facts presented in Plaintiff's response were imported wholesale into the Complaint, my recommendation would remain the same. The "additional facts" included in Plaintiff's responses are merely more allegations that (1) Judge Robles' rulings were incorrect and (2) Defendants acted improperly. *See doc. 20* at 9-19; *doc. 26* at 10-19. Nowhere does Plaintiff assert a single fact which plausibly shows an agreement between them. Perhaps Plaintiff has knowledge of such facts but has simply failed to plead them. As such, the undersigned will toll the time period for objections to this recommendation if Plaintiff files a motion for leave to amend which complies with the Federal Rules of Civil Procedure and the local rules.

be supplemental to any federal question claim. "Under those circumstances, the most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice – that is the seminal teaching of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), reconfirmed in *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) and repeated in a host of cases such as *Sawyer v. County of Creek*, 908 F.2d 663, 668 (10th Cir. 1990). That concept has been codified in 28 U.S.C. § 1367(c)(3), part of the supplemental jurisdiction enactment in 28 U.S.C. § 1367." *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (additional citations omitted). There is no reason to treat the instant case as an exception to the general rule. In fact, compelling reasons support allowing the state claims to proceed in state court. First, the federal case is in its earliest stage. The only substantial activity has been the filing of motions to dismiss. An initial scheduling conference has not been held, *see* Fed. R. Civ. P. 16, and no discovery has been conducted. In such circumstances, this Court is disinclined to retain supplemental jurisdiction of state claims when the lone federal claim is dismissed. *See e.g. Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 945 (10th Cir. 2001) (noting that it would be difficult for appellant to argue against dismissal of state claims because instant case had not yet begun discovery and "considerations of judicial economy, convenience, and fairness [did not favor] retaining jurisdiction"). Second, Defendants' primary arguments for dismissal of the state claims rest on the doctrines of

res judicata and collateral estoppel. It is more appropriate for a state court to decide whether its prior ruling bars the instant claims.

Consequently, I recommend that, if Count I is dismissed, that the remaining claims be dismissed without prejudice.

*Sanctions*

Finally, Defendants seek sanctions pursuant to "Rule 11 of the Federal Rules of Civil Procedure along with 42 U.S.C. § 1988 and 28 U.S.C. §1927." *Doc. 16* at 12-14; see also *doc. 25* at 8. Under Rule 11, a "motion for sanctions must be made separately from any other motion . . . ." Fed. R. Civ. P. Rule 11(c)(2). Clearly, Defendants have not done so and, thus, Rule 11 sanctions are not available until they do. Given that Defendants' arguments for sanctions under 42 U.S.C. § 1988 and 28 U.S.C. §1927 are intertwined with those made under Rule 11, at this time I recommend denying any sanction without prejudice to a subsequent motion seeking sanctions.[7]

## *Conclusion*

Plaintiff's case against Defendants Vogel and Webber is not barred by the *Rooker Feldman* doctrine. However, his claim under section 1983 is subject to dismissal under Rule 12(b)(6) because he fails to state a plausible claim that Defendants acted under color of state law. Defendants, as private actors, can be liable under section 1983 only if

---

[7] Even if the case were dismissed as recommended herein, this Court would retain the authority to impose sanctions. *See Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992) (noting that Rule 11 sanctions could be assessed even where court never had jurisdiction); *see also United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1057 (10th Cir. 2004).

Plaintiff shows that they conspired with Judge Robles to deprive Plaintiff of a constitutional right under color of state law. The allegations in the Complaint on this point are either conclusory or utterly insufficient to plausibly make such an assertion. Consequently, I recommend dismissing without prejudice Plaintiff's 1983 claim for failure to state a claim.

Because this suit is still in its earliest stages and because I recommend dismissal of the federal claim, dismissal of the state claims without prejudice is also warranted.

Because Defendants have failed to make a separate motion for sanctions under Rule 11, I recommend denying those sanctions without prejudice. Given that Defendants' arguments for sanctions based on alternative authority are commingled with their Rule 11 argument, I recommend denying sanctions on those bases without prejudice to a new motion.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). If Plaintiff files a motion for leave to file an amended complaint which complies with the Federal Rules of Civil Procedure and the local rules, this time period will be tolled until the motion for leave is resolved. A party must file any**

**objections with the Clerk of the District Court within the fourteen-day period (after accounting for any tolling, if applicable) if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**